

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF OREGON

| | | |
|---|---|---|
| **DAVID W. HERCHER**<br>BANKRUPTCY JUDGE | 1001 S.W. FIFTH AVENUE, # 700<br>PORTLAND, OREGON 97204<br>(503) 326-1538 | COLLIN M. COLE<br>LAW CLERK<br>DORIA D. ARNTSEN<br>JUDICIAL ASSISTANT |

March 16, 2018

NOT FOR PUBLICATION

VIA ECF ONLY

Michael Scott
Michael D. O'Brien

Subject:   Kenneth Ray Tollstrup
           Case No. 15-33924-dwh13

Counsel:

    I write to explain my separate ruling on Debtors' [*sic*] Request for Hearing re: Notice of Mortgage Payment Change Filed by Nationstar Mortgage LLC and Motion for Additional Relief[1] filed by debtor, Kenneth Ray Tollstrup.

    I will grant Tollstrup's motion but deny his request for punitive sanctions against Nationstar. He may separately move for an award of attorney fees and costs. This letter constitutes my findings of fact and conclusions of law.

### I.   Facts

    Tollstrup filed his chapter 13 petition on August 13, 2015,[2] and the court confirmed his plan on October 22.[3] With respect to his first mortgage held by Nationstar, the plan[4] required him to cure an arrearage, which he estimated at $72,020,[5] and maintain current payments.[6]

    Nationstar filed its proof a claim on November 24, 2015.[7] It asserted a secured claim of $228,895.45[8] and an arrearage as of the petition date of $80,650.45.[9]

---

[1] Docket item 46.
[2] Docket item 1.
[3] Docket item 26.
[4] Docket item 13.
[5] Docket item 13 at ¶ 2(b)(1).
[6] Docket item 13 at ¶ 4.
[7] Claim no. 3-1.
[8] Claim no. 3-1 at 1.
[9] Claim no. 3-1 at 1.

Michael D. O'Brien
Michael Scott
March 16, 2018
Page 2

On May 24, 2016, the court entered an Order Allowing Permanent Loan Modification,[10] which authorized Tollstrup to enter into a loan modification with Nationstar. The modification, among other things, capitalized the arrears on the mortgage as of the end of the modification trial period.[11] The modification required him to make three monthly trial payments, which he did, upon which the modification became permanent. He understood that he was considered current on his mortgage obligation by virtue of the modification.

The paperwork accompanying the modification explained that a $3,232.04 escrow shortage existed as of that date.[12] The shortage was projected based on "the timing of [Tollstrup's] tax and insurance payments."[13] The modification required an initial monthly escrow payment of $412.99, which was calculated based on the existing escrow shortage.[14] In other words, the stated escrow payment already accounted for the projected shortage calculated as of the time of the modification. More precisely, the stated escrow payment was based on the assumption that he would pay the shortage over the course of 60 months.[15] But the modification gave him the alternative option of paying the entire balance in a lump sum.[16] He did not avail himself of the lump-sum option.

After entering into the modification but before the court approved it, Tollstrup objected to Nationstar's claim because the stated arrearage was no longer accurate.[17] The objection requested that the arrearage be reduced to $2,864.85, which was the amount that the trustee had already paid as of the date of the objection.[18] Before the deadline for Nationstar to respond to the claim objection, it amended its claim,[19] acknowledging the loan modification and changing the arrearage amount to zero. As Tollstrup had done in the claim objection, Nationstar acknowledged the $2,864.85 that the trustee had already paid on its arrearage. Due to the amended claim, the court and both parties agreed that the objection was moot.[20]

In May 2016, while the modification was pending, Nationstar filed a Notice of Mortgage Payment Change.[21] It showed that Tollstrup's monthly escrow payment would increase from $347.05 to $359.12,[22] and his monthly mortgage payment would change from $1,182.10 to $1,285.44.[23] The reason for this change was "Loan Modification," i.e., the payment increased to accommodate the increase in principal due to the capitalization of arrears. The notice indicated that the escrow shortage was $0,[24] based on a projected lump-sum payment of the earlier escrow

---

[10] Docket item 38.
[11] Ex. C at 2.
[12] Ex. C at 2.
[13] Ex. C at 2.
[14] Ex. C at 2.
[15] Ex. C at 2.
[16] Ex. C at 2.
[17] Docket item 33.
[18] Docket item 33 at ¶ 3.
[19] Ex. D.
[20] Docket item 43.
[21] Claims register at claim 3, entry of 5/18/2016; Ex. A.
[22] Ex. E at 1.
[23] Ex. E at 1.
[24] Ex. E at 4.

shortage for July 2016.[25] Although payment of the lump sum was an option for Tollstrup, he did not exercise it, and Nationstar has not convincingly argued that it had any plausible reason to think he would exercise it. To the contrary, the loan modification seemed to assume that the lump-sum option would *not* be exercised, because the monthly escrow payment stated in the modification paperwork was calculated based on payments over the course of 60 months.

A year later, in May 2017, Nationstar filed a second Notice of Mortgage Payment Change.[26] That notice indicated only a change in the escrow payment, from $359.12 to $647.94.[27] The increase was based on a projected escrow shortage of $3,672.56.[28] The monthly increase was only $288.82, which is less than 3,672.56 divided by 12, or 306.05. The discrepancy is because the projected escrow payment—ignoring the shortage—decreased by $17.22.[29]

Nationstar has acknowledged that the shortage stated in the May 2017 notice was "as listed in the Loan Modification."[30] But, where the loan modification had assumed that Tollstrup would make up the shortage over 60 months, the May 2017 notice gave only the option of paying in a lump sum or over 12 months. The 60-month option—which he had unequivocally selected by making the corresponding payments for the past year—was not acknowledged in the May 2017 notice.

On June 1, 2017, Tollstrup filed his motion. He argued that the escrow-payment increase stated in the May 2017 notice was based on an arrearage that he was already paying as part of his ongoing monthly payments under the modification, the correct payment was $1,285.44, and the $3,672.56 escrow shortage was incorrect.

I scheduled an evidentiary hearing to consider the relief requested in his request.[31] Before that hearing, Nationstar withdrew its May 2017 Notice of Mortgage Payment Change.[32] Shortly thereafter, and also before the hearing, it filed a new Notice of Mortgage Payment Change in October 2017.[33] The new notice was substantially consistent with his argument in his request; it reduced the projected monthly escrow payments to $367.40, reduced the overall monthly payment to $1,293.72, and removed almost the entire escrow shortage from the calculation.[34]

I find and conclude that the May 2017 notice was in error. It should not have included the $3,672.56 escrow shortage, and the projected monthly payment should have been substantially less. I also find and conclude that the October 2017 notice is substantially accurate.

---

[25] Ex. E at 5.
[26] Ex. F.
[27] Ex. F at 1.
[28] Ex. F at 4.
[29] See Ex. F at 4.
[30] Nationstar Trial Memorandum [65] at 2.
[31] Docket item 52 (Scheduling Order).
[32] Ex. H.
[33] Ex. I.
[34] Ex. I at 4.

I reject Nationstar's explanation, given both in its trial memorandum and in the testimony of Justin Laubscher, that the May 2017 notice was accurate because it reflected a projected payment of the existing escrow shortage over 12 months. Even if that explanation were mathematically plausible, which is unclear, it is inconsistent with the facts that Tollstrup clearly manifested his intent to pay the shortage over 60 months by making the payments requested in the loan modification, and the loan modification never even contemplated a 12-month option. Rather, it allowed him to choose between 60 months and a single lump-sum payment; he chose 60 months. A 12-month payment plan was not suggested by the loan modification, but instead was imposed unilaterally by Nationstar in the May 2017 notice, notwithstanding that it and Tollstrup had already committed themselves to the 60-month option.

## II.    Analysis

### A.    *This court has jurisdiction over the motion.*

This court has jurisdiction over the motion under 28 U.S.C. §§ 1334 and 157. The motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O). Neither party has disputed this court's constitutional authority to enter a final order on the motion.

### B.    *Nationstar violated Rule 3002.1.*

Rule 3002.1(b) required Nationstar to provide "notice of any change in the payment amount, including any change that results from an interest rate or escrow account adjustment. . .."[35] The rule requires creditors to provide information without expressly saying that the information must be correct. But I conclude that the provision of inaccurate information is equivalent to a failure to provide information.[36] The purpose of Rule 3002.1, as discussed below, is served only if the creditor provides correct information.

Therefore, because I have found that Nationstar's May 2017 notice contained inaccurate information, I conclude that Nationstar violated Rule 3002.1(b). That violation is subject to the sanctions described in Rule 3002.1(i). I turn next to those sanctions.

Tollstrup requests that I (1) preclude Nationstar from introducing evidence that contradicts the information on the claims register, (2) find the correct amount of the future monthly payments, (3) find that he was current on his mortgage payments as of the date of the filing of the request, (4) find that he owes no fees, costs, or charges to Nationstar or its privies, (5) find that the escrow is "in balance with no shortage or excess due," (6) award him his attorney fees, and (7) assess a "punitive financial sanction against Nationstar" in an amount that will compensate him for his damages and deter Nationstar from future violations of Rule 3002.1.

---

[35] Fed. R. Bankr. P. 3002.1(b).
[36] *See In re p*, 563 B.R. 308, 315 (Bankr. N.D. Cal. 2016) (including inaccurate information in a Rule 3002.1 disclosure "complies with neither the letter not the spirit" of the rule); *In re Ferrell*, 580 B.R. 181, 187 (Bankr. D.S.C.) (incorrect statement may be "worse than no statement"); *but see In re Trevino*, 535 B.R. 110, 131 (Bankr. S.D. Tex. 2015) (concluding that inaccurate notice does not violate Rule 3002.1 and analyzing issue instead under an abuse-of-process framework).

Most of these requests are no longer relevant, due to my finding that Nationstar's October 2017 notice correctly reflects the state of Tollstrup's obligation as of that date. I therefore focus on two requests: the request for attorney fees and the request for punitive financial sanctions.

>    C.   *Rule 3002.1 requires the provision of information by a mortgage creditor during a chapter 13 case and permits the imposition of sanctions for violation of that requirement.*

Federal Rule of Bankruptcy Procedure 3002.1 imposes special information-disclosure requirements on creditors holding claims secured by an interest in the debtor's principal residence. It applies only in chapter 13 cases[37] and only if either the debtor or the trustee will make maintenance payments under the chapter 13 plan.[38] As the advisory committee explained, the rule's purpose is to "aid in implementation of section 1322(b)(5), which permits a chapter 13 debtor to cure a default and maintain payments of a home mortgage over the course of the debtor's plan."[39] According to one bankruptcy court, the rule was intended "to address a significant problem" in which mortgage creditors failed to provide notice to the debtor of mortgage-payment changes during the case—possibly out of fear that such notice would be a stay violation[40]—and foreclosed after the case ended.[41]

Because debtors and trustees need up-to-date information about the ongoing mortgage payments that they must make under a plan, the rule requires mortgage creditors to furnish that information throughout the case. Debtors and trustees need notices of mortgage payment changes in order to "challenge the validity of any such charges, if necessary, and to adjust postpetition mortgage payments to cover any properly claimed adjustment."[42]

In essence, the rule is akin to a mandatory discovery or other disclosure requirement. It is not a substantive debtor-protection requirement analogous to the automatic stay or discharge injunction. Rather, it is a procedural rule designed to facilitate the implementation of plan provisions. Its purpose is to furnish the debtor or trustee, depending on which of them makes cure and maintenance payments—in this district, primarily the debtor—with the information needed either to pay the creditor's claim or to challenge it.

Accordingly, the primary means of enforcement provided in Rule 3002.1(i) is that the court may bar a creditor from relying at trial upon information that it should have disclosed but didn't.[43] This sanction is analogous to the sanction in Federal Rule of Civil

---

[37] Fed. R. Bankr. P. 3002.1(a)(1).
[38] Fed. R. Bankr. P. 3002.1(a)(2).
[39] Fed. R. Bankr. P. 3002.1 advisory committee's note.
[40] Fed. R. Bankr. P. 3002.1 advisory committee's note ("Compliance with the notice provision of the rule should also eliminate any concern on the part of the holder of the claim that informing a debtor of a change in postpetition payment obligations might violate the automatic stay.").
[41] *In re Tollios*, 491 B.R. 886, 888 (Bankr. N.D. Ill. 2013).
[42] Fed. R. Bankr. P. 3002.1 advisory committee's note.
[43] Fed. R. Bankr. P. 3002.1(i)(1).

Procedure 37(b)(2)(A)(i) through (iii),[44] which empower the court to strike pleadings, treat certain facts as established, and prohibit the disobedient party from introducing evidence. Rule 3002.1 also expressly provides for attorney fees, which also parallels the sanctions for civil discovery violations.[45]

Finally, the rule permits the court to "award other appropriate relief."[46] I will address the meaning of this provision below in my discussion of punitive sanctions.

### D.  *Rule 3002.1 also permits an award of attorney fees.*

When there has been a violation of Rule 3002.1, I have discretion to award attorney fees.[47]

Nationstar argues that Tollstrup should not recover attorney fees because he and his attorney could have resolved the matter more easily and cheaply by conferring with Nationstar instead of filing the sanctions request.[48]

Although I agree that parties and their attorneys should not be encouraged to engage in unnecessary litigation, I do not agree that this litigation was unnecessary. Tollstrup acted properly in response to Nationstar's erroneous May 2017 notice by challenging the validity of the information it contained. Based on the arguments that Nationstar presented at the hearing, it is clear to me that litigation was necessary to obtain a definitive determination that the notice was in fact erroneous. That Nationstar withdrew the offending notice and filed a corrected one shortly before the originally-scheduled hearing does not alter my conclusion. Nationstar might never have corrected the inaccurate notice if Tollstrup had not taken action.

For all these reasons, I conclude that Tollstrup is entitled to recover a reasonable attorney fee, if he can demonstrate a sufficient causal connection between his fees and Nationstar's violation.[49]

### E.  *I will not impose a monetary sanction.*

Tollstrup testified about the stress and frustration that he experienced as a result of the inaccuracies of the May 2017 notice, and he provided some evidence of monetary loss in connection with it. During oral argument, his attorney occasionally referred to his "damages."

---

[44] *See* Eugene R. Wedoff, *Proposed New Bankruptcy Rules on Creditor Disclosure and Court Enforcement of the Disclosures—Open for Comment*, 83 Am. Bankr. L.J. 579, 584 (2009) ("These sanctions are modeled after those for failure to make ordered discovery under Fed. R. Civ. P. 27 [*sic*; should read '37'].").

[45] *See* Fed. R. Civ.P. 26(g)(3) (permitting award of attorney fees, among other sanctions, for an improper discovery certification).

[46] Fed. R. Bankr. P. 3002.1(i)(2).

[47] *In re Felipe*, 549 B.R. 252, 256 (Bankr. D. Haw. 2016).

[48] Nationstar Trial Memorandum [65] at 4.

[49] *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 and n.5 (Apr. 18, 2017) (both inherent-power sanctions and rule-enforcement sanctions depend on a causal link between the misconduct and the awarded fees).

Rule 3002.1 is a procedural rule. Rules of procedure cannot create independent causes of action that are unavailable under applicable substantive law.[50] I am unaware of any court that has viewed Rule 3002.1(i), or its close cousin, Rule 3001(c)(2)(D), to permit an award of compensatory damages for violations.

Some courts have gone further and held that Rule 3001(c)(3)(B) is only a "claims processing rule" and does not support any independent action separate from an objection to the offending claim.[51] At least in the case of Rule 3002.1, the advisory committee has made clear that the rule can be invoked outside the claim-objection process; the case can even be reopened to seek sanctions.[52] But I agree that this procedural rule does not create a "cause of action" in the sense of a freestanding, substantive right to recover damages for an injury. Probably for this reason, Tollstrup's moving paper requested not "damages" but "sanctions," which are the conventional way of remedying a procedural violation. Thus, I conclude that Tollstrup cannot recover compensatory damages, in the tort-law sense, for Nationstar's violation.

The "other appropriate relief" language is not a license to impose any sanction that I might choose.[53] The District of Vermont bankruptcy court held that Rule 3002.1(i) permitted the imposition of monetary sanctions,[54] but the district court reversed in an unpublished opinion holding that the bankruptcy court had exceeded its authority.[55] Like the Vermont district court,[56] I have been unable to find any other authority supporting an award of monetary sanctions. I conclude that Rule 3002.1 does not permit me to impose punitive monetary sanctions. Tollstrup also has suggested that 11 U.S.C. § 105(a) supports his request. But the Ninth Circuit has held that section 105(a) does not permit an award of serious punitive sanctions.[57] Although "'relatively mild' noncompensatory fines" may be available for contempt under section 105(a),[58] contempt is not an available remedy where Nationstar has violated a rule but not a court order.[59] Nor may I impose a sanction under my inherent power in the absence of bad-faith conduct.[60]

I conclude that neither section 105(a) nor my inherent authority is available as a source of sanctions for a violation of Rule 3002.1.

---

[50] 28 U.S.C. § 2075 (bankruptcy rules do not "abridge, enlarge, or modify any substantive right").
[51] *In re Critten*, 528 B.R. 835, 841 (Bankr. M.D. Ala. 2015); *In re Freeman-Clay*, 578 B.R. 423, 448-49 (Bankr. W.D. Mo. 2017).
[52] Fed. R. Bankr. P. 3002.1 advisory committee's note ("the debtor may move to have the case reopened in order to seek sanctions" for failure to file proper response to notice of final cure payment).
[53] *In re Tollios*, 491 B.R. 886, 892-92 (Bankr. N.D. Ill. 2013) (deeming debtors' request to be relieved of property-tax obligations "arbitrary" and a "drastic remedy" that bore "no rational relationship" to the violation and questioning whether it would "ever be appropriate" to impose such a sanction).
[54] *In re Gravel*, 556 B.R. 561, 569 (Bankr. D. Vt. 2016).
[55] *PHH Mtg. Corp. v. Sensenich*, Case No. 5:16-cv-00256-gwe, 2017 WL 699820 (Dec. 18, 2017).
[56] *Id.* at *5 ("The parties have not cited and the court has not found any case from any American jurisdiction in which a bankruptcy court has imposed sanctions on this basis and in this manner.").
[57] *In re Dyer*, 322 F.3d 1178, 1194 (9th Cir. 2003).
[58] *Id.* at 1193.
[59] *In re Hercules Enters., Inc.*, 387 F.3d 1024, 1029 (9th Cir. 2004) (contempt requires "violat[ion of] a specific and definite order" of the court).
[60] *In re DeVille*, 361 F.3d 539, 548 (9th Cir. 2004).

     At the conclusion of evidence, Tollstrup requested that I keep the evidentiary record open to consider evidence of Nationstar's financial capacity for the purpose of formulating an appropriate sanction. I took that request under submission and now deny it, because I have concluded that no monetary sanction is available.

### III.    Conclusions and rulings

     I will enter an order granting the motion but denying the requested sanctions with the exception of the request for attorney fees. Tollstrup may move for an award of costs and attorney fees in accordance with Federal Rule of Civil Procedure 54(d), as applicable through Federal Rule of Bankruptcy Procedure 7054 and 9014(c).

                                          Sincerely,

                                          DAVID W. HERCHER
                                          Bankruptcy Judge.

.

  .